**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

PIZZA INN, INC.,                                      )
                                                      )
                        Plaintiff,                    )
                                                      )
v.                                                    )          Case No. CIV-21-00322-PRW
                                                      )
FAWZI ODETALLAH,                                      )
                                                      )
                        Defendant.                    )

## <u>ORDER</u>

Before the Court is Pizza Inn's Motion for Summary Judgment (Dkt. 54), Mr. Odetallah's Objection to Plaintiff's Motion for Summary Judgment (Dkt. 60), and Pizza Inn's Reply to Defendant's Objection to Plaintiff's Motion for Summary Judgment (Dkt. 65). For the reasons explained below, the Court **GRANTS** the motion **IN PART** and **DENIES** the motion **IN PART**.

### *Background*

In 2007, Pizza Inn and Mr. Odetallah entered into a franchise agreement ("2007 Franchise Agreement"), granting Mr. Odetallah a non-exclusive license to use Pizza Inn's proprietary trademarks in connection with the restaurant located at 2224 North 14th Street, Ponca City, Oklahoma 74601.[1] Pizza Inn claims it is the sole and exclusive owner of the trademarks, and Mr. Odetallah has not disputed this. In 2009, the parties renewed the

---

[1] Pl.'s Mot. (Dkt. 54), Ex. A. Sometime after 2007, the restaurant moved to a new address, 2600 N. 14th Street, Ponca City, Oklahoma 74601. Pl.'s Mot. (Dkt. 54), at 4.

Franchise Agreement ("2009 Renewal Agreement")[2] and entered into a new franchise agreement ("2009 Franchise Agreement"),[3] but the parties have contested the validity of these 2009 agreements. Believing their franchisor-franchisee relationship ended in July 2019 with the natural expiration of the 2009 Franchise Agreement, Pizza Inn sued Mr. Odetallah in April 2020 for breach of contract and trademark infringement when he continued using the trademarks beyond the July 2019 expiration. However, the parties subsequently entered into a joint settlement agreement ("Settlement Agreement") in which Mr. Odetallah agreed to cease and desist from further use of the trademarks within thirty days of the entry of the Order of Dismissal, which was filed and entered on September 8, 2020.[4]

Ultimately, however, Mr. Odetallah continued operating the Ponca City restaurant, and Pizza Inn sued once again on April 12, 2021, on claims for breach of contract and trademark infringement. Mr. Odetallah brought counterclaims alleging breach of contract, fraud, duress, intentional misrepresentation, negligence, and coercion, ultimately seeking to void the 2009 Renewal Agreement and establish the 2007 Franchise Agreement as the controlling document. On December 16, 2021, the Court denied Pizza Inn's motion for a preliminary injunction (Dkt. 18).

---

[2] Pl.'s Mot. (Dkt. 54), Ex. B.

[3] Pl.'s Mot. (Dkt. 54), Ex. C.

[4] *See* Settlement Agreement (Dkt. 1, Ex. 4), ¶ 2.

On February 28, 2022, counsel for Pizza Inn sent Mr. Odetallah and his counsel a notice of deficiencies and demand for cure ("Deficiency Letter").[5] In the Deficiency Letter, counsel for Pizza Inn outlined all deficiencies associated with Mr. Odetallah's operation of the Pizza Inn restaurant in Ponca City, Oklahoma. Further, the Deficiency Letter stated that, if Mr. Odetallah did not cure the deficiencies within thirty days of his counsel receiving the Deficiency Letter, Pizza Inn would exercise its right to terminate the franchise agreement. After Mr. Odetallah did not cure the alleged deficiencies as outlined in the Deficiency Letter, Pizza Inn sent a notice of termination to Mr. Odetallah on April 13, 2022 ("Termination Letter").[6]

Pizza Inn's Amended Complaint (Dkt. 42), filed on April 20, 2022, advances eight claims against Mr. Odetallah: (1) trademark infringement; (2) breach of the Franchise Agreement (2007 and 2009 Franchise Agreements); (3) breach of the Renewal Agreement; (4) fraudulent inducement; (5) intentional misrepresentation; (6) fraud; (7) negligent misrepresentation; and (8) breach of the Settlement Agreement. Mr. Odetallah's Amended Counterclaim (Dkt. 33) brings several counterclaims against Pizza Inn (Dkt. 33), including (1) breach of contract, (2) fraud, (3) conversion, and (4) negligence. Now, in its Motion for Summary Judgment (Dkt. 54), Pizza Inn seeks summary judgment on two of its claims— its trademark infringement and breach of contract claims—against Mr. Odetallah, as well summary judgment in Pizza Inn's favor with respect to all Mr. Odetallah's counterclaims.

---

[5] Pl.'s Mot. (Dkt. 54), Ex. D.

[6] Pl.'s Mot. (Dkt. 54), Ex. E.

*Legal Standard*

Federal Rule of Civil Procedure 56(a) requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute for trial before the fact-finder.[7] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[8] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[9] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[10]

If the movant carries its initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine

---

[7] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[9] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[10] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[11] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts"[12] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[13] And as the Supreme Court explained, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment,"[14] since "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[15] Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[16]

When the nonmoving party has the ultimate burden of persuasion at trial, the moving party "has both the initial burden of production on a motion for summary judgment

---

[11] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

[12] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[13] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52); *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

[14] *Liberty Lobby*, 477 U.S. at 247–48.

[15] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[16] *Scott v. Harris*, 550 U.S. 372, 381 (2007).

and the burden of establishing that summary judgment is appropriate as a matter of law."[17] "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[18] "Once the moving party points out the absence of evidence to create a 'genuine issue' of a 'material fact' on which the non-moving party bears the burden of proof at trial, . . . [t]he non-moving party must set forth specific facts showing there is a genuine issue for trial."[19]

### Discussion

In its Motion for Summary Judgment (Dkt. 54), Pizza Inn asks the Court to grant summary judgment on two of its claims—trademark infringement and breach of contract— as well as summary judgment in its favor with respect to all Mr. Odetallah's counterclaims. The Court will first address Pizza Inn's claims before turning to Mr. Odetallah's counterclaims.

### A. Pizza Inn's Claims

Pizza Inn argues that, because of the April 2022 Termination Letter purporting to terminate both the 2007 and 2009 Franchise Agreements, Mr. Odetallah has no right to

---

[17] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002*), as amended on denial of re'g*, (Jan. 23, 2003).

[18] *Id.*

[19] *Otis v. Canadian Valley-Reeves Meat Co.*, 884 F. Supp. 446, 449–50 (W.D. Okla. 1994), *aff'd*, 52 F.3d 338 (10th Cir. 1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

continue using Pizza Inn's trademarks at the Ponca City restaurant. Therefore, by continuing to use those trademarks in commerce, Pizza Inn argues that Mr. Odetallah has breached certain provisions contained in both Ponca City franchise agreements requiring Mr. Odetallah to immediately cease further use of Pizza Inn's trademarks at that location. The parties do not dispute that Mr. Odetallah continues to use Pizza Inn's identical trademarks at the Ponca City restaurant.[20] The trademark infringement and breach of contract claims thus hinge on whether Pizza Inn rightfully terminated the franchise agreements and thereby extinguished any right Mr. Odetallah previously had to use Pizza Inn's trademarks.

### 1. Trademark Infringement

As explained below, Pizza Inn has carried its burden to show there is no genuine dispute of material fact related to whether it rightfully terminated the agreements when Mr. Odetallah failed to cure his deficiencies within thirty days, as required by both the 2007 and 2009 Franchise Agreements. Furthermore, Pizza Inn has carried its burden with respect to Mr. Odetallah's continued use of Pizza Inn's identical trademarks at the Ponca City restaurant in violation of his post-termination obligations under both franchise agreements.

Trademark infringement exists when any person, without the consent of the trademark's registrant, uses or intends to use "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which

---

[20] *See* Pl.'s Mot. (Dkt. 54), Ex. H; Def.'s Resp. (Dkt. 60).

such use is likely to cause confusion, or to cause mistake, or to deceive."[21] Thus, to carry its burden at summary judgment on its trademark infringement claim, Pizza Inn must show there is no genuine dispute of any material fact for each of the following: (1) Pizza Inn has a protectable interest in the trademark; (2) Mr. Odetallah has used an identical or similar trademark in commerce; and (3) Mr. Odetallah has likely confused customers by using an identical or similar trademark.[22] The Court will examine each element in turn.

### a. Protectable Interest

To determine whether Pizza Inn has a protectable interest in the trademark, the Court looks to the parties' 2007 and 2009 Franchise Agreements.[23] Both agreements contain identical sections entitled "Default by Franchisee" (Section 11) and "Franchisee Termination and Other Remedies" (Section 12).[24] Section 11 lists eighteen events of default and states that

> [i]f any of the events or conditions listed below (each an "Event of Default") occurs and is not remedied at the expiration of the applicable notice period, if any, Franchisee shall be in default under this Agreement and Company may pursue remedies provided in <u>Section 12</u>. Company's failure to take prompt action with respect to a particular Event of Default shall not constitute a waiver thereof, nor shall its express waiver of a particular Event

---

[21] 15 U.S.C. § 1114(1).

[22] *See Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014) (listing the elements of a trademark infringement claim under 15 U.S.C. § 1114). No party has disputed that Pizza Inn is the exclusive owner of its trademarks, and Pizza Inn has included its trademark registrations as an exhibit to its Motion for Summary Judgment. *See* Pl.'s Mot. (Dkt. 54), Ex. G.

[23] *Derma Pen, LLC*, 773 F.3d, at 1120 ("To address this element, we must interpret the . . . agreement.").

[24] Pl.'s Mot. (Dkt. 54), Exs. A, C.

of Default constitute a waiver of any concurrent or subsequent Event of Default.[25]

Included within the events of default are failure to do any of the following: (1) make royalty payments (Section 11.K); (2) maintain a point-of-sale computer system (Section 11.E); (3) regularly submit financial reports and statements (Section 11.A); (4) submit monthly financial reports and statements (Sections 11.A and 11.E); (5) make contributions toward advertising (Sections 11.A, 11.E, and 11.K); and (6) use only products as designated by Pizza Inn for all menu items served at the Ponca City restaurant.

In its February 2022 Deficiency Letter, Pizza Inn stated that Mr. Odetallah had failed to comply with those six obligations and demanded that he cure the listed deficiencies within thirty days. In April 2022 (more than thirty days later), after Mr. Odetallah had not cured his deficiencies, Pizza Inn sent Mr. Odetallah and his counsel the Termination Letter, asking them to "please take notice that Pizza Inn is hereby terminating both franchise agreements in dispute in the above litigation."[26] The letter also stated that "[a]ll post-termination requirements contained in Mr. Odetallah's agreements with Pizza Inn remain in full force and effect including, but not limited to, his absolute and unconditional cessation of any further use of Pizza Inn's trademarks."[27] Both the 2007 and 2009 Franchise Agreements unambiguously provide that Pizza Inn has the right to terminate the agreements in the event Mr. Odetallah fails to cure any events of default after

---

[25] *Id.*

[26] Pl.'s Mot. (Dkt. 54), Ex. E.

[27] Pl.'s Mot. (Dkt. 54), Exs. A, C.

thirty days' notice. The agreements also state that Mr. Odetallah must cease further use of Pizza Inn's trademarks after termination.[28]

Pizza Inn has carried its burden to show that there is no genuine dispute that it rightfully terminated the franchise agreements and thus has a protectable interest in its trademarks. Looking even at just one deficiency, failure to pay royalty-payments, Pizza Inn has demonstrated that Mr. Odetallah has not paid royalty payments since July 3, 2019.[29] Even if it were true, as Mr. Odetallah asserts, that Pizza Inn refused to accept royalty payments starting in 2019, that does not explain why Mr. Odetallah did not attempt to pay a portion of *any* past-due royalty payments after receiving the Deficiency Letter on February 28, 2022. Indeed, in Mr. Odetallah's response to Pizza Inn's Motion for Summary Judgment, he puts forth no argument that he was not in default,[30] that the notice was deficient, that he tendered payment of past-due royalty payments, or that Pizza Inn did not have the right to terminate the franchise agreements. Therefore, the Court concludes that Pizza Inn rightfully terminated the 2007 and 2009 Franchise Agreements. Pizza Inn has

---

[28] Mr. Odetallah has not pointed to any relevant provision in the franchise agreements—and the Court found none—that would restrict Pizza Inn's right to terminate the franchise agreements with proper notice in the event of Mr. Odetallah's failure to cure deficiencies.

[29] Pl.'s Mot. (Dkt. 54), Ex. J (affidavit of Clint Fendley, Chief Financial Officer at Rave Restaurant Group, Inc., Pizza Inn's parent company).

[30] To the extent Mr. Odetallah argues that Pizza Inn had previously waived the royalty-payment provision, the Court finds this argument unpersuasive. If Pizza Inn in fact refused to accept royalty payments in 2019, that was due to its belief that the franchise agreement had expired. Mr. Odetallah has not demonstrated how the dispute over the franchise agreement's proper expiration or any subsequent refusal to accept royalty payments could be construed as a waiver of the royalty-payment provision of an allegedly unexpired contract.

thus carried its burden to show there is no genuine dispute that it has a protectable interest in its trademarks and that Mr. Odetallah has no further right to use Pizza Inn's trademarks at the Ponca City restaurant.

### b. *Identical Mark in Commerce*

There is no genuine dispute that, despite Pizza Inn's April 2022 Termination Letter, Mr. Odetallah has continued using Pizza Inn's identical trademark in commerce. Pizza Inn has attached as an exhibit to its Motion for Summary Judgment July 2022 photographs from the Ponca City restaurant showing Pizza Inn's trademark displayed on the restaurant's exterior and interior signage.[31] Mr. Odetallah has neither attempted to rebut Pizza Inn's evidence nor "designate[d] 'specific facts showing that there is a genuine issue for trial.'"[32] Therefore, the Court concludes that Mr. Odetallah has used Pizza Inn's trademarks in commerce after the franchise agreements were terminated in April 2022.

### c. *Likelihood of Confusion*

The Tenth Circuit has identified the following factors for evaluating the likelihood of confusion in trademark-infringement cases:

(a)    the degree of similarity between the marks;

(b)    the intent of the alleged infringer in adopting its mark;

(c)    evidence of actual confusion;

(d)    the relation in use and the manner of marketing between the goods or services marketed by the competing parties;

---

[31] Pl.'s Mot. (Dkt. 54), Ex. G (Pizza Inn's trademark registrations); Pl.'s Mot. (Dkt. 54), Ex. H (July 2022 photographs from the Ponca City restaurant).

[32] *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c)).

(e)     the degree of care likely to be exercised by purchasers; and

(f)     the strength or weakness of the marks.[33]

But "when identical marks are used in the same geographic area for the same class of goods or services, likelihood of confusion is presumed."[34] Although likelihood of confusion is a question of fact, it is nevertheless "amenable to summary judgment in appropriate cases."[35] Since Mr. Odetallah does not dispute PizzPizza Inn's argument that he has continued using Pizza Inn's identical trademarks at the Ponca City restaurant, the Court concludes that Pizza Inn has carried its burden to show no genuine dispute of material fact with respect to likelihood of confusion.

Accordingly, because Pizza Inn has carried its burden for each element of its trademark-infringement claim—(1) that it has a protectable interest, (2) that Mr. Odetallah has continued using identical marks in commerce, and (3) that there is a likelihood of confusion from using those identical marks—Pizza Inn is entitled to summary judgment on its trademark infringement claim.

### 2. Breach of Contract

Turning to Pizza Inn's breach of contract claim, Pizza Inn argues that Mr. Odetallah "breached the contracts by continuing to operate the Ponca City restaurant after Plaintiff

---

[33] *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 833 (10th Cir. 2005).

[34] *Solutech, Inc. v. Solutech Consulting Servs., Inc.*, 153 F. Supp. 2d 1082, 1088 (E.D. Mo. 2000) (citing *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 195 (3d Cir.1990)).

[35] *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002).

terminated both franchise agreements."[36] Having concluded that Pizza Inn rightfully terminated the franchise agreements, and that Mr. Odetallah has continued using Pizza Inn's trademarks in violation of identical provisions contained in both franchise agreements, the Court finds that Pizza Inn is entitled to summary judgment on its breach of contract claim. The Court, however, does not accept Pizza Inn's calculation of damages and allows that issue to move forward in litigation.

As a preliminary matter, the Court must decide which state's laws govern the franchise agreements. The Court has jurisdiction based on 28 U.S.C. § 1332, so the Court applies the forum state's choice-of-law rules.[37] Under the law of the forum state, Oklahoma, "a contract will be governed by the laws of the state where the contract was entered into unless otherwise agreed and unless contrary to the law or public policy of the state where enforcement of the contract is sought."[38] Because the parties agreed to be governed by the laws of Texas,[39] the Court must determine whether the application of Texas law would violate the law or public policy of Oklahoma.[40] The Court concludes that

---

[36] Pl.'s Mot. (Dkt. 54), at 9.

[37] *Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 123 F.3d 1351, 1352 (10th Cir. 1997).

[38] *MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1260 (10th Cir. 2006) (internal quotations omitted).

[39] Each franchise agreement contains a choice-of-law provision stating that "[t]his Agreement shall for all purposes be governed by, interpreted and enforced in accordance with the laws of the State of Texas (without regard to Texas choice of law rules)." Pl.'s Mot. (Dkt. 54), Ex. A (2007 Franchise Agreement); Pl.'s Mot. (Dkt. 54), Ex. C (2009 Franchise Agreement).

[40] *MidAmerica Constr. Mgmt., Inc.*, 436 F.3d at 1260.

it does not.[41] Accordingly, the Court will apply Texas law to Pizza Inn's breach of contract claim.

In Texas, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[42] Pizza Inn argues in its Motion for Summary Judgment that no matter which agreement is the controlling document, there is no dispute that Mr. Odetallah has breached both agreements. Specifically, Pizza Inn asserts (1) that either or both franchise agreements governing the Ponca City restaurant are validly formed contracts; (2) that Pizza Inn tendered performance as required under both contracts; (3) that Mr. Odetallah breached the contracts by continuing to operate the Ponca City restaurant after Plaintiff terminated both franchise agreements; and (4) that Plaintiff suffered monetary damage as a result.

The parties do not dispute that at least one of the franchise agreements was a validly formed and enforceable contract. And since Pizza Inn argues that Mr. Odetallah has

---

[41] *Cf. Hawk Enterprises, Inc. v. Cash Am. Int'l, Inc.*, 282 P.3d 786, 790 (Okla. Civ. App. 2012). In *Hawk Enterprises, Inc.*, when evaluating a choice-of-law provision in a franchise agreement, the Oklahoma Court of Civil Appeals concluded that Oklahoma law rather than Texas law applied to a claim of tortious interference of the franchise agreement. However, the court applied Oklahoma law because "the choice of law provision in the franchise agreement [was] not broad enough to include [the] claim for tortious interference." *Id.* at 790.  In Pizza Inn's case, the Court has little trouble concluding that the choice-of-law provision is broad enough to include this breach of contract claim. Accordingly, the Court finds that applying the choice-of-law provision to a breach of the franchise agreement does not violate Oklahoma law or public policy.

[42] *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

breached post-termination obligations that are identical in both the 2007 and 2009 Franchise Agreements, the Court need not decide for the purposes of Pizza Inn's breach of contract claim which contract is the controlling agreement. Nor do the parties dispute that Pizza Inn fully complied with the provisions contained in both agreements regarding Pizza Inn's right to terminate the franchise agreements upon Mr. Odetallah's failure to cure deficiencies. Therefore, having concluded for the purposes of the trademark infringement claim that Mr. Odetallah has continued using Pizza Inn's trademarks in violation of the franchise agreements' post-termination obligations, the sole issue remaining for the Court is Pizza Inn's injury resulting from that breach.[43]

In its Motion for Summary Judgment, Pizza Inn relies on its argument that Mr. Odetallah breached his post-termination obligations under both franchise agreements. Therefore, to prevail on its breach of contract claim at summary judgment, Pizza Inn must show that there is no genuine dispute of material fact that Mr. Odetallah's breach of the *post-termination obligations* caused an injury to Pizza Inn,[44] as opposed to breaches of pre-

---

[43] Since Pizza Inn's claims are based on breaches of Mr. Odetallah's post-termination obligations, the Court finds no merit to Mr. Odetallah's argument that "[a]ll of Pizza Inn's claims against Defendant in this matter accrued prior to 12/22/2019." Def.'s Resp. (Dkt. 60), ¶ 35.

[44] *See* § 2. Plaintiff's elements, *O'Connor's Texas Causes of Action* Ch. 5-B § 2 (2022 ed.); *Southwell v. University of the Incarnate Word*, 974 S.W.2d 351, 354–55 (Tex.App.—San Antonio 1998, pet. denied).

termination obligations that might have accrued before Pizza Inn terminated the franchise agreements.

In support of the injury element of its breach of contract claim, Pizza Inn states that Mr. Odetallah has failed to pay royalties and supplier incentives from the Ponca City restaurant in the amount of $132,932.10 based on missed payments from July 3, 2019, through October 1, 2022.[45] But this calculation misses the mark; it is based upon alleged breaches unconnected to Mr. Odetallah's continued use of Pizza Inn's trademarks post termination. Rather, this calculation is based upon grounds that Pizza Inn has not squarely asserted in its Motion for Summary Judgment—breaches of *pre-termination* obligations under the 2007 and 2009 Franchise Agreements. Nevertheless, Pizza Inn has demonstrated that Mr. Odetallah has continued using Pizza Inn's trademarks after the April 13 Termination Letter without paying for that use. Pizza Inn has thus established, and Mr. Odetallah has not otherwise argued, that there is no genuine dispute of material fact related to Pizza Inn's injury resulting from Mr. Odetallah's post-termination use of Pizza Inn's trademarks.

Although Mr. Odetallah contends there is a genuine dispute of material fact related to Pizza Inn's breach of contract claim, he has not supported his contentions by "citing to particular parts of materials in the record."[46] The Court "will not search the record in an effort to determine whether there exists dormant evidence which might require submission

---

[45] Pl.'s Mot. (Dkt. 54), Ex. J.

[46] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

of the case to a jury."[47] The Court thus concludes that Pizza Inn has carried its burden at summary judgment with respect to its breach of contract claim. The Court, however, does not accept Pizza Inn's damages calculation. Therefore, the issue of Pizza Inn's damages will continue to the next stage of litigation.

*B.  Mr. Odetallah's Counterclaims*

Pizza Inn also asks the Court to grant summary judgment in its favor on Mr. Odetallah's counterclaims. For the reasons explained below, the Court grants Pizza Inn's motion.

As the moving party, Pizza Inn has the initial burden at summary judgment to "produc[e] affirmative evidence negating an essential element of the nonmoving party's claim, or [show] that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[48] "Once the moving party points out the absence of evidence to create a 'genuine issue' of a 'material fact' on which the non-moving party bears the burden of proof at trial, . . . [t]he non-moving party must set forth specific facts showing there is a genuine issue for trial."[49]

Pizza Inn argues that Mr. Odetallah has not produced any documentation or other evidence in support of his counterclaims, which Pizza Inn says are not clearly set forth in Mr. Odetallah's Amended Counterclaim (Dkt. 33). In his response to Pizza Inn's Motion

---

[47] *Thomas v. Witchita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992).

[48] *Id.*

[49] *Otis v. Canadian Valley-Reeves Meat Co.*, 884 F. Supp. 446, 449–50 (W.D. Okla. 1994), *aff'd*, 52 F.3d 338 (10th Cir. 1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

for Summary Judgment, he clarifies that his counterclaims "include, but [are] not limited to, Fraud, Conversion, Violation of the Oklahoma Business Opportunity Sales Act (71 O.S. § 819), Deceptive Trade Practices under the Oklahoma Consumer Protection Act (15 O.S. § 753), Breach of Contract, and Negligence."[50] The Court will examine each counterclaim in turn.

   1. *Oklahoma Business Opportunity Sales Act and Oklahoma Consumer Protection Act*

As an initial matter, Pizza Inn is correct that Mr. Odetallah's response contains claims he did not assert in his Amended Counterclaim (Dkt. 33)—claims brought under the Oklahoma Business Opportunity Sales Act and the Oklahoma Consumer Protection Act. Pizza Inn argues that Mr. Odetallah is attempting "to utilize his summary judgment response to assert new causes of action against Plaintiff, which is wholly improper."[51] The Court agrees that Mr. Odetallah's response to Pizza Inn's Motion for Summary Judgment is "not the proper avenue for asserting new claims against a party."[52] Even if the Court were to construe Mr. Odetallah's response as a request to amend his Amended Counterclaim (Dkt. 33), the Court declines to grant Mr. Odetallah leave to amend his

---

[50] Def.'s Resp. (Dkt. 60), at 8.

[51] Pl.'s Reply (Dkt. 65), at 4.

[52] *Id.*

counterclaims to assert entirely new claims the month before trial is set to begin.[53] Therefore, Mr. Odetallah may not assert these counterclaims against Pizza Inn.

    *2. Fraud*

    Much of the parties' litigation has centered on whether Pizza Inn made fraudulent statements that caused Mr. Odetallah to execute the 2009 Franchise Agreement at the restaurant in Ponca City, Oklahoma. In Oklahoma, the elements of fraud are "(1) a false misrepresentation, (2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, (3) with the intention that it be acted upon, and (4) which is relied upon by the other party to her own detriment."[54] Additionally, the party's reliance "must be justifiable."[55]

    To meet its initial burden of showing an absence of evidence with respect to Mr. Odetallah's fraud claim, Pizza Inn points to interrogatories in which it asked Mr. Odetallah to "[i]dentify each of the allegedly false representations made to [him] by Pizza Inn."[56] Mr. Odetallah responded with "Objection. Request is overly broad. Without waiving the objection, Pizza Inn falsely stated that the Defendants franchise agreement had expired, before it had actually expired, and that Defendants would not be allowed to operate his

---

[53] *Cf. Martinez v. Potter*, 347 F.3d 1208, 1212 (10th Cir. 2003) ("[O]ur cases interpret the inclusion of new allegations in a response to a motion for summary judgment[] as a potential request to amend the complaint. . . .").

[54] *Houchin v. Hartford Life Ins. Co.*, No. CIV-14-522-D, 2016 WL 502075, at *4 (W.D. Okla. Feb. 8, 2016) (citing Bowman v. Presley, 2009 OK 48, ¶ 13, 212 P.3d 1210, 1218).

[55] *State ex rel. S.W. Bell Tel. Co. v. Brown*, 1974 OK 19, ¶ 19, 519 P.2d 491, 495.

[56] Pl.'s Mot. (Dkt. 54), Ex. K, at 9.

Pizza Inn restaurants without signing a Renewal Agreement and paying a renewal fee."[57] But Pizza Inn argues that "Odetallah's discovery responses merely summarize[] the alleged representations discussed in the pleadings" and that he "has not produced a single document in support" of Mr. Odetallah's fraud claim. In response, Mr. Odetallah points to (1) his deposition testimony and (2) the 2009 Renewal Agreement itself as support for his claim that he justifiably relied on a false representation made by Pizza Inn.

First looking to Mr. Odetallah's deposition testimony, the Court concludes that the testimony does not raise a genuine dispute of material fact with respect to any false representation made by Pizza Inn. In his response to Pizza Inn's Motion for Summary Judgment, Mr. Odetallah argues that "[i]n 2009 Plaintiff falsely represented to the Defendant that his Pizza Inn restaurant in Ponca City expired in 2009 and that he would have to sign a renewal Agreement, a new Franchise Agreement and pay a renewal fee to stay in business, which he did."[58] In support, Mr. Odetallah asserts that six portions of the deposition testimony show that he relied on these alleged false representations when executing the 2009 Renewal Agreement.[59] After reviewing the relevant portions of Mr. Odetallah's deposition transcript, the Court concludes that the testimony raises no genuine dispute of material fact. For example, Mr. Odetallah relies on the following exchange with Pizza Inn's counsel:

---

[57] *Id.*

[58] Def.'s Resp. (Dkt. 60), at 8.

[59] Def.'s Suppl. (Dkt. 70), at 1.

Q:      And you don't have any recollection of anyone telling you, 'If you
        don't sign these Ponca City documents, we're going to immediately
        close your restaurant', you don't have any recollection of that; do you?

A:      I don't recall that, I mean –

Q:      Okay.

A:      --you have to sign it, you know, 'We need this document to be signed',
        and whatever fees, and that's all I remember, just sign and give fees,
        you know. . . .

Q:      And so do you -- do you have any recollection or do you have a
        document anywhere of Pizza Inn saying if you don't sign those
        documents regarding the renewal in Ponca City that you'll have to
        immediately close your restaurant?

A:      They didn't put it that way. I remember they said, 'We need it or
        you're going to be in default', that's what Chris used to explain, you
        know. If you don't sign document you'll be in default. . . .[60]

But not only has Mr. Odetallah failed to argue he was not in default, thus eliminating

any claim that this representation by Pizza Inn was false, his deposition testimony suggests

that Pizza Inn made *no* oral statement about the franchise agreement naturally expiring in

2009 or that Pizza Inn would close the Ponca City restaurant were Mr. Odetallah not to

sign the 2009 Renewal Agreement and Franchise Agreement. The following transcript

portion further suggests that Pizza Inn made no such statement:

Q:      Okay. But as far as sitting here today, you don't – you don't remember
        anyone threatening you that they were going to close Ponca City if
        you didn't sign the 2009 renewal agreement; do you?

A:      I don't recall that, no.[61]

---

[60] Def.'s Supp (Dkt. 70), at 70–71.

[61] *Id.* at 71.

In addition, the other portions Mr. Odetallah cites in the deposition transcript show that Pizza Inn's statements were limited to asking Mr. Odetallah to sign the renewal agreement and pay the fee:

> Q:    … Did you say, 'I don't know why I'm signing this because we've spent all this money'?
>
> A:    Because, like I told you, I never have a bad communication, I mean, he – I trust – it was, 'Okay, sign, give me the check', and walk away, and I – from all this 18 stores I have, and it was whatever day, they come and just tell me 'Sign, give us', and I did, and that's – that's what I did.[62]

The Court thus concludes that Mr. Odetallah's deposition transcript does not raise a genuine dispute of material fact related to any alleged false representations made by Pizza Inn.

Mr. Odetallah also argues that the 2009 Renewal Agreement *itself* falsely represented that the 2007 Franchise Agreement would expire in 2009 despite the previous agreement's twenty-year term. The 2009 Renewal Agreement states in the recitals that "[t]he initial term of the Original Franchise Agreement will expire on June 30, 2009," and Section 2 states that "Franchisee and Franchisor agree that the Original Franchise Agreement shall expire as of the Effective Date of this Agreement."[63] But the Court need not conclude whether these statements in the 2009 Renewal Agreement were false representations, because Mr. Odetallah's deposition testimony leads the Court to find that he did not rely on these representations in the agreement:

---

[62] *Id.* at 56.

[63] Pl.'s Mot. (Dkt. 54), Ex. B.

Q:      Okay. And – and do I understand your testimony that you did not read either the 2009 franchise agreement that's Exhibit 5 or the renewal agreement that's Exhibit 6? You did not read either of them?

A:      I never read the whole agreement, I just, 'Sign here, give me the money', and that's what I did.[64]

…

Q:      Okay. And – and we agree that in 2009, you did sign both documents, Exhibit 5 and Exhibit 6; correct?

A:      That's my signature.

Q:      Okay. And we agree in 2009, you had the ability to read both Exhibit 5 and Exhibit 6; correct?

A:      I – like I told you, I just sign it. He told me sign, I never read it, I never – he was just telling me what to do, that's that. . . .[65]

…

Q:      … I'm asking you . . . at the time that you were presented with Exhibit 5 and Exhibit 6, there wasn't anything preventing you from reading either document; was there?

A:      Well, at that time I should have read it and get legal advice from somebody because I did not read it.[66]

Because Mr. Odetallah has not carried his burden to show a genuine dispute of material fact with respect to his fraud claim, the Court grants Pizza Inn's motion on that claim.

     *3.  Conversion*

---

[64] *Id.* at 57.

[65] *Id.* at 59.

[66] *Id.* at 60.

Pizza Inn is also entitled to summary judgment in its favor with respect to Mr. Odetallah's conversion claim. Conversion is "the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made."[67] To prevail on a conversion claim, a party must establish (1) that it was the owner of the property, (2) that it was the legal possessor of the property or a person entitled to immediate possession of the property, (3) that the opposing party wrongfully exercised dominion or control over the property, and  (4) damages.[68] Pizza Inn has met its burden to show an absence of evidence supporting Mr. Odetallah's conversion claim, most notably the absence of a calculation of damages resulting from any alleged conversion.[69] And in Mr. Odetallah's response to Pizza Inn's Motion for Summary Judgment, he does not "set forth specific facts showing there is a genuine issue for trial" or point to any evidence showing he suffered damages as a result of any conversion by Pizza Inn.[70] Accordingly, Pizza Inn is entitled to summary judgment in its favor on Mr. Odetallah's conversion claim.

### 4.  Breach of Contract

---

[67] *Burrell v. Burrell*, 229 F.3d 1162 (10th Cir. 2000).

[68] § 2. Plaintiff's elements, *O'Connor's Texas Causes of Action* Ch. 6 § 2 (2022 ed.); *Metro. Life Ins. Co. v. Bradshaw*, 450 F. Supp. 3d 1258, 1264 (W.D. Okla. 2020).

[69] *See* Pl.'s Mot. (Dkt. 54), Ex. K, at 3.

[70] *See Otis v. Canadian Valley-Reeves Meat Co.*, 884 F. Supp. 446, 449–50 (W.D. Okla. 1994), *aff'd*, 52 F.3d 338 (10th Cir. 1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Pizza Inn is also entitled to summary judgment in its favor on Mr. Odetallah's breach of contract claims. First, with respect to Mr. Odetallah's counterclaim based upon Pizza Inn's alleged breaches of the franchise agreement for the *McAlester* restaurant, Pizza Inn asserts that the franchisee in that agreement is Allen's Dynamic Food, Inc., not Mr. Odetallah. Therefore, Pizza Inn argues, Mr. Odetallah lacks standing to assert any claims with respect to the McAlester restaurant because any loss to him as owner or principal of Allen's Dynamic Food, Inc., is derivative of the loss to Allen's Dynamic Food, Inc.  But even if it were true, as Mr. Odetallah contends, that "Defendant is a party to the 2007 McAlester Franchise Agreement, is bound to all of [its] terms and personally guaranteed the obligations set forth therein,"[71] Pizza Inn has nevertheless met its burden to show a lack of evidence supporting Mr. Odetallah's breach of contract claims with respect to *both* the Ponca City and McAlester restaurants and that it is entitled to summary judgment as a matter of law.

To meet its burden, Pizza Inn points to Mr. Odetallah's responses to its first set of interrogatories. Interrogatory five asked Mr. Odetallah to "[i]dentify the specific provisions of each contract [he] allege[s] Pizza Inn has breached, as asserted in paragraph 3 of [his] counterclaim, differentiating between the Ponca City and McAlester franchise agreements."[72] Mr. Odetallah responded with "Objection. Request is vague, ambiguous overly broad. Without waiving the objection, the Defendant alleges that Plaintiff violated

---

[71] Def.'s Resp. (Dkt. 60), ¶ 7.

[72] Pl.'s Mot. (Dkt. 54), Ex. K.

the first Pizza Inn franchise agreement that both parties executed for each of the aforementioned locations."[73] Because Pizza Inn has demonstrated that Mr. Odetallah failed to point to even one contract provision in any franchise agreement it alleges Pizza Inn breached, Pizza Inn has met its burden "to point[] out the absence of evidence to create a 'genuine issue' of a 'material fact.'"[74]

As the non-moving party who ultimately bears the burden of persuasion at trial on his breach of contract claims, Mr. Odetallah "must set forth specific facts showing there is a genuine issue for trial."[75] Mr. Odetallah asserts that, "if the trier of fact determines that Plaintiff improperly terminated the Defendant's franchise rights or that Plaintiff waived or modified the 'contracts' by not enforcing the same in 2019, then the Plaintiff's premature termination would be a breach of the 'contract' and Defendant[] would be entitled to his damages."[76] But Mr. Odetallah does not connect this assertion to any evidence in the record supporting an argument that Pizza Inn wrongfully terminated the franchise agreements, and the Court will not attempt to construct an argument for him.[77] Rather, he points to evidence in the record showing that, in 2019, Pizza Inn "stopped accepting Defendant's royalty and

---

[73] *Id.*

[74] *Otis*, 884 F. Supp. at 449–50.

[75] *Id.*

[76] Def.'s Resp. (Dkt. 60), at 7.

[77] *See United States v. Yelloweagle*, 643 F.3d 1275, 1284 (10th Cir.2011) (noting that the court will not "make arguments for" a litigant); *Oak Ridge Care Ctr., Inc. v. Racine Cnty., Wis.*, 896 F. Supp. 867, 876 (E.D. Wis. 1995) ("[T]he defendant must articulate why the plaintiff's case fails. . . . Courts will not make arguments for the litigants.") (internal citations omitted).

advertising fee payments . . . and instructed [its] food distributors to stop selling Pizza Inn food products to Defendant's Ponca City and McAlester Pizza Inn restaurants,"[78] presumably because Pizza Inn understood the franchise agreements to have expired. However, Mr. Odetallah neither explains nor points to any evidence in the record showing how retaining the royalty payments or purchasing food products from another distributor caused him any damages.[79] Because the Court concludes that Mr. Odetallah has failed to raise a genuine dispute of material fact with respect to his counterclaim for breach of contract, Pizza Inn is entitled to summary judgment in its favor with respect to Mr. Odetallah's breach of contract counterclaims for the Ponca City and McAlester restaurants.

### 5. *Negligence*

Lastly, Pizza Inn is entitled to summary judgment in its favor with respect to Mr. Odetallah's negligence claim. Pizza Inn has carried its burden to show an absence of evidence for this claim,[80] and Mr. Odetallah has failed to point to any evidence in the record to raise a genuine dispute of material fact. Instead, to support his claim for negligence, Mr. Odetallah's argument consists of the following conclusory statements:

> Plaintiff has a duty to exercise ordinary care to avoid damaging the Defendant's Pizza Inn franchise rights in Ponca City and McAlester, which it ignored. On July 29, 2020 Defendant notified the Plaintiff that it was violating his franchise rights but Plaintiff ignored the Defendant. Plaintiff continued on with [its] crusade to deprive the Defendant of the franchise

---

[78] Def.'s Resp. (Dkt. 60). ¶¶ 25, 26.

[79] § 2. Plaintiff's elements, *O'Connor's Texas Causes of Action* Ch. 5-B § 2 (2022 ed.) ("To prove an action for breach of contract, the plaintiff must establish the defendant's breach caused it injury.") (citing *Southwell v. University of the Incarnate Word*, 974 S.W.2d 351, 354–55 (Tex.App.—San Antonio 1998, pet. denied)).

[80] Pl.'s Mot. (Dkt. 54), at 13–14.

rights he purchased in 2007 by any means necessary. Plaintiff's actions against the Defendant were outrageously reckless, *willful* and wanton. Plaintiff's actions have caused substantial economic damages to the Defendant.[81]

In Oklahoma, "[w]here the wrong is *not willful* and intentional, three essential elements are necessary, (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of defendant to perform that duty; and (3) injury to the plaintiff proximately resulting from such failure."[82] Not only has Mr. Odetallah attempted to argue that Pizza Inn's conduct was both "willful" and "negligent," he has failed to develop any argument for the required elements of negligence. What is more, Mr. Odetallah has not, by pointing to evidence in the record, "set forth specific facts showing there is a genuine issue for trial."[83] Therefore, Pizza Inn is entitled to summary judgment in its favor with respect to Mr. Odetallah's negligence claim.

### *Conclusion*

The Court finds that summary judgment for Pizza Inn is appropriate because it successfully carried its burden to "establish[] that summary judgment is appropriate as a matter of law."[84] Furthermore, in response to Pizza Inn's Motion for Summary Judgment

---

[81] Def.'s Resp. (Dkt. 60), at 8–9 (emphasis added).

[82] *Sheridan v. Deep Rock Oil Corp.*, 1947 OK 241, 201 Okla. 312, 313, 205 P.2d 276, 277 (emphasis added).

[83] *Otis v. Canadian Valley-Reeves Meat Co.*, 884 F. Supp. 446, 449–50 (W.D. Okla. 1994), *aff'd*, 52 F.3d 338 (10th Cir. 1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[84] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002*), as amended on denial of re'g*, (Jan. 23, 2003).

(Dkt. 54), Mr. Odetallah failed to "set forth specific facts showing there is a genuine issue for trial."[85] Although Mr. Odetallah has attempted to dispute the material facts through his allegations and filings, the specific facts evinced in the record demonstrate that any disputes relevant to the parties' respective claims at issue in Pizza Inn's Motion for Summary Judgment are not genuine or sufficient to submit to a jury.

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Pizza Inn's Motion for Summary Judgment (Dkt. 54). Pizza Inn is entitled to summary judgment on its trademark infringement and breach of contract claims, the only issue remaining being the proper calculation of damages. Pizza Inn is also entitled to summary judgment in its favor with respect to all Mr. Odetallah's counterclaims.

**IT IS SO ORDERED** this 26th day of September 2022.

        PATRICK R. WYRICK
        UNITED STATES DISTRICT JUDGE

---

[85] *Otis*, 884 F. Supp. at 449–50.