IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PIZZA INN, INC., | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. CIV-21-00322-PRW |
| FAWZI (ALLEN) ODETALLAH, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Pizza Inn's Second Motion for Summary Judgment (Dkt. 106), Mr. Odetallah's Objection (Dkt. 110), and Pizza Inn's Reply (Dkt. 112). For the reasons explained below, the Court **GRANTS** Pizza Inn's motion.

*Background*

Mr. Odetallah is a former franchisee of a Pizza Inn restaurant located in Ponca City, Oklahoma. On April 13 of this year, Pizza Inn rightfully terminated the franchise agreement governing Mr. Odetallah's operation of the Ponca City restaurant. But Mr. Odetallah was undeterred—he continued operating the Ponca City restaurant without a valid franchise agreement. On September 26, the Court granted in part and denied in part Pizza Inn's first motion for summary judgment (Dkt. 84), concluding that Mr. Odetallah breached the franchise agreement and infringed Pizza Inn's trademarks by continuing to operate the Ponca City restaurant after Pizza Inn terminated the franchise agreement. The

1

Court, however, denied summary judgment on the proper calculation of Pizza Inn's damages.

When Mr. Odetallah claimed illness the morning of pretrial conference and jury selection, the Court reset the pretrial conference to Monday, October 17, 2022. Pizza Inn's counsel travelled from Texas to attend the October 17 conference, but Mr. Odetallah and his counsel both failed to appear. The Court thus conducted the pretrial conference in their absence. During the pretrial conference, the Court granted Pizza Inn leave to file a second motion for summary judgment on the issue of damages for Pizza Inn's breach-of-contract and trademark-infringement claims. The Court now considers that motion.

## *Legal Standard*

Federal Rule of Civil Procedure 56(a) requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute for trial before the fact-finder.[1] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[2] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[3] A dispute is

---

[1] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

"genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[4]

If the movant carries its initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[5] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts"[6] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[7] And as the Supreme Court explained, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment,"[8] since "[w]here

---

[4] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

[5] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

[6] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[7] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52); *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993).

[8] *Liberty Lobby*, 477 U.S. at 247–48.

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[9] Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[10]

## *Discussion*

Pizza Inn requests that the Court grant summary judgment on damages in the amount of $78,960.00, consisting of $27,736.00 on the breach-of-contract claim and $51,224.00 on the trademark-infringement claim. The Court will first address the breach-of-contract damages before turning to the trademark-infringement damages.

   A. *Breach-of-Contract Damages*

Pizza Inn asserts that it sustained damages in the amount of $27,736.00 resulting from Mr. Odetallah's breach of the franchise agreement. To support this amount, Pizza Inn relies on calculations from its Chief Financial Officer, Clint Fendley. Mr. Fendley explained that Pizza Inn expects to receive 8.33% of a given restaurant's weekly gross sales in the form of royalty fees and supplier incentives[11] and that section 12(B) of the Ponca City restaurant's franchise agreement states that, upon Pizza Inn's termination of the franchise agreement, Pizza Inn is entitled to "[r]ecover all royalty fees and other

---

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).
[10] *Scott v. Harris*, 550 U.S. 372, 381 (2007).
[11] Pl.'s Mot. (Dkt. 106), at 6 (citing Ex. A, ¶ 7 and Ex. D, § 3(C)).

obligations, together with late payment and interest charges[,] as provided in this Agreement or any other applicable contract."[12]

Mr. Fendley reviewed the historical weekly sales for the Ponca City restaurant to determine Pizza Inn's damages. Specifically, he calculated what Pizza Inn would have received from Mr. Odetallah had he continued paying royalties and ordering food from Pizza Inn's suppliers from the date Pizza Inn terminated the franchise agreement (April 13, 2022) to the first day of scheduled trial in this matter (October 11, 2022). From these historical sales, which Pizza Inn says it produced to Mr. Odetallah during discovery, Mr. Fendley calculated the anticipated weekly gross sales for the Ponca City restaurant from April 13 to October 11. He determined that 8.33% of this number was equal to $27,736.00.[13]

In response, Mr. Odetallah's sole objection is that Mr. Fendley's calculation is "legally insufficient." Mr. Odetallah does not, however, point to "particular parts of materials in the record" to show Mr. Fendley's calculations are genuinely disputed or "show[] that the materials cited [in Pizza Inn's motion] do not establish the absence . . . of a genuine dispute."[14] Instead, Mr. Odetallah makes the conclusory argument that "[t]here is no possibility that [Pizza Inn's historical sales data] is even remotely correct as the data is at least two (2) years old and the economy has changed significantly in that time."[15] He

---

[12] *Id.* at Ex. A, ¶ 9, Ex. D, § 12(B).

[13] *Id.* at Ex. A, ¶ 12.

[14] *See* Fed. R. Civ. P. 56 (c)(1).

[15] Def.'s Resp. (Dkt. 110), at 3.

continues that Pizza Inn "should have requested current sales figures from the Defendant, [but] it did not."[16]

The Court rejects Mr. Odetallah's argument that Mr. Fendley's calculation based on historical sales data is legally insufficient. Pizza Inn must establish its damages with reasonable—but not absolute—certainty.[17] "Reasonable certainty" is a standard "flexible enough to accommodate the myriad circumstances in which claims for lost profits arise."[18] Furthermore, "[e]vidence to establish profits must not be uncertain or speculative. It is not necessary that profits should be susceptible of exact calculation, it is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness."[19]

Pizza Inn has ascertained its damages for its breach-of-contract claim with a reasonable degree of certainty. Although Mr. Odetallah complains that Mr. Fendley relied on sales data that was two years old and that Pizza Inn "should have requested current sales figures from the Defendant," Pizza Inn in fact requested updated sales figures during discovery but that Mr. Odetallah never produced such figures: On June 30, 2022, Pizza Inn served requests for production seeking all sales, profit, and loss statements for the Ponca

---

[16] *Id.*

[17] *See Lakeside Village Homeowners Association, Inc. v. Belanger*, 545 S.W.3d 15 (Tex. App. El Paso 2017), *rev. denied*, (Sept. 8, 2017). The Court applies Texas law to Pizza Inn's breach-of-contract claim. *See* Order on Mot. for Summ. J. (Dkt 84), at 13–14.

[18] *Texas Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994) (citing *Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097 (Tex. 1938)).

[19] *Id.* (quoting *Sw. Battery Corp.*, 115 S.W.2d at 1098–99).

City restaurant from June 1, 2019, to present.[20] And Mr. Odetallah has not pointed to any evidence in the record that would sufficiently cast doubt upon Mr. Fendley's damages calculation. The Court thus finds that Pizza Inn has "intelligently estimated"[21] its damages resulting from Mr. Odetallah's breach of the franchise agreement, especially considering Mr. Odetallah's failure to produce during discovery more contemporaneous sales data.

Pizza Inn has carried its burden to show there is no genuine dispute of material fact related to the damages it sustained from Mr. Odetallah's breach of contract, and the Court concludes Pizza Inn is entitled to summary judgment on its breach-of-contract claim in the amount of $27,736.00.

B. *Trademark-Infringement Damages*

Pizza Inn also asserts that it is entitled to disgorgement of profits in the amount of $51,244.00 on its trademark-infringement claim. The Court agrees.

The Lanham Act provides that, "subject to the principles of equity," a trademark registrant "shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."[22] "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."[23] But before awarding disgorgement of profits as a remedy for

---

[20] Pl.'s Reply (Dkt. 112), Ex. H at 4–6.

[21] *Texas Instruments, Inc.*, 877 S.W.2d at 279.

[22] 15 U.S.C. § 1117(a).

[23] *Id.*

trademark infringement, a court must "weigh the equities to fashion a remedy that matches the harm."[24]

Weighing the equities of this case, the Court concludes that a disgorgement of profits is warranted. Not only did Mr. Odetallah continue operating the Ponca City restaurant after Pizza Inn terminated the franchise agreement on April 13, he also doesn't contest Pizza Inn's assertion that he continued operating the restaurant even after the Court granted summary judgment on Pizza Inn's breach-of-contract and trademark-infringement claims. Although willfulness isn't a prerequisite for an award of profits, "a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate."[25] Mr. Odetallah's conduct demonstrates an intent to confuse or deceive customers that his restaurant was a Pizza Inn franchise and to benefit from Pizza Inn's goodwill and reputation.[26] The Court also finds that a disgorgement of profits is necessary to deter future misconduct and to protect the public's interest in making intentional trademark infringement unprofitable.[27] And contrary to Mr. Odetallah's

---

[24] *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1161 (10th Cir. 2013).

[25] *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020).

[26] *Klein-Becker USA, LLC*, 711 F.3d at 1162 ("[B]efore awarding disgorgement of profits, courts must . . . weigh the equities to fashion a remedy that matches the harm. The district court found that the equitable factors—including [the plaintiff's] lost sales, [the defendant's] benefitting from [the plaintiff's] goodwill, and [the defendant's] deception of customers—supported awarding disgorgement of . . . profits . . . . We agree with this analysis.").

[27] *See Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 178 (3d Cir. 2005) ("[A]n accounting of the infringer's profits is available if the defendant is unjustly enriched, if the plaintiff sustained damages, or if an accounting is necessary to deter infringement. These rationales are stated disjunctively; any one will do."); *see also* J. Thomas McCarthy, 4 *McCarthy on Trademarks and Unfair Competition* § 25:31 (5th ed. 2022) ("Continued use by former

8

assertion, the Court need not present "[a]ll evidence and testimony . . . before the [j]ury for the equities to be weighed."[28] The Court thus concludes that the appropriate remedy for Mr. Odetallah's trademark infringement is disgorgement of profits under the Lanham Act.

Pizza Inn has also carried its burden in calculating the proper award of profits. Mr. Fendley determined that, from the date Pizza Inn terminated the franchise agreement until the first day of scheduled trial, Mr. Odetallah's profits amounted to $51,224.00. This amount is based on a document Mr. Odetallah produced during discovery—namely, a spreadsheet containing sales projections and profit forecasting for the Ponca City restaurant. Mr. Odetallah testified during his deposition that this spreadsheet was created by his accountant, who projected that the Ponca City restaurant would see profits in the amount of $102,448.00 for 2022. Because six months passed from the date Pizza Inn terminated the franchise agreement until the first day of scheduled trial, Pizza Inn divided $102,448.00 in half, arriving at a profit of $51,224.00.

Mr. Odetallah responds that Pizza Inn "cannot prove what the Defendant's sales were, as required by the Lanham Act" and that the sales-projection and profit-forecasting spreadsheet is "speculative evidence that has been used to calculate a[n] inflated number."[29] He continues that "the effect of government mandated restaurant closures and

---

franchisee, dealer or licensee of the mark constitutes a fraud on the public, since they are led to think that the continuing user is still connected with the trademark owner.").

[28] *See* J. Thomas McCarthy, 5 *McCarthy on Trademarks and Unfair Competition* § 30:61 (5th ed. 2022) ("Because an accounting of profits is an 'equitable remedy,' there is no right to a jury trial if the only monetary remedy the trademark owner seeks is an accounting of the alleged infringer's profits.").

[29] Def.'s Resp. (Dkt. 110), 4.

occupancy limits have not been taken into account" and that "Plaintiff's Exhibit C does not show the actual sales made by the Defendant."[30] Therefore, Mr. Odetallah concludes, "Plaintiff has failed to meet its burden in its motion by proving the Defendant's sales amount" and that "the evidence [Pizza Inn] provided by law is simply not enough for this Court to make a final ruling."[31]

But Pizza Inn has not failed to meet its burden. As Pizza Inn notes in its reply, "Plaintiff relied on Defendant's own representations regarding sales and profits because that is all that Defendant produced."[32] What is more, Mr. Odetallah claims the spreadsheet is "speculative evidence" that leads to "a[n] inflated number," but his own accountant created this spreadsheet, and Mr. Odetallah planned to introduce it at trial.[33] The Court thus finds that Mr. Odetallah's complaints about the spreadsheet's accuracy have no merit. The Lanham Act provides that "the plaintiff shall be required to prove defendant's sales only" and the "defendant must prove all elements of cost or deduction claimed."[34] Pizza Inn has carried its burden by pointing to Mr. Odetallah's spreadsheet, which contains *both* sales and profits projections.[35] And Mr. Odetallah's conclusory objections fail to raise a genuine dispute of material fact.

---

[30] *Id.*

[31] *Id.*

[32] Pl.'s Reply (Dkt. 112), at 6.

[33] *See* Def.'s Witness & Ex. List (Dkt. 61), Ex. 34.

[34] 15 U.S.C. § 1117(a).

[35] *Cf. Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985) ("[When] the defendant controls the most satisfactory evidence of sales the plaintiff needs only establish a basis for a reasoned conclusion as to the extent of injury caused by the

For the foregoing reasons, Pizza Inn has demonstrated that there is no genuine dispute of material fact that it is entitled to disgorgement of profits in the amount of $51,224.00.

### *Conclusion*

The Court concludes that Pizza Inn has carried its burden to "show[] that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law."[36] Therefore, the Court **GRANTS** Pizza Inn's second motion for summary judgment (Dkt. 106). Mr. Odetallah has failed to cite "particular parts of materials in the record" or "show[] that the materials cited [in Pizza Inn's motion] do not establish the absence . . . of a genuine dispute."[37] Accordingly, the Court finds that Pizza Inn is entitled to a combined

---

deliberate and wrongful infringement. We find it hard to imagine a better basis for the district court's reasoned conclusion than the defendants' own statements, fortuitously preserved on videotape. . . . Plaintiffs here proved defendants' sales, using defendants' own words.") (internal quotations and citations omitted). *See Chloe v. Zarafshan*, No. 1:06-CIV-03140-RJH-MHD, 2009 WL 2956827, at *5 (S.D.N.Y. Sept. 15, 2009) ("[I]f the actual sales cannot be precisely determined, the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate record-keeping or failure to produce documentary evidence.") (internal quotations and citations omitted); *AW Indus., Inc. v. Sleep Well Mattress, Inc.,* No. 07-cv-3969 (SLT) (JMA), 2009 WL 485186, at *4 (E.D.N.Y. Feb. 26, 2009) ("Although this method of calculating damages is speculative, I find it to be reasonable and appropriate. The amount requested is not excessive and, moreover, it is defendant who is to blame for the inability to calculate an exact figure."); *Phat Fashions LLC v. Blue Max Corp.*, CV–01–3933, 2005 WL 1221838, at *2 (S.D.N.Y. May 2, 2005) ("In the absence of any information . . . on costs, and because [defendant] has not cooperated in discovery, the Court finds that . . . estimated sales are a fair indicator of profits."); *Hosp. Int'l v. Mahtani*, No. 2:97-CV-87, 1998 WL 35296447, at *8 (M.D.N.C. Aug. 3, 1998) ("The plaintiff's burden to establish defendant's sales is minimal because the defendant is in the better position to ascertain exact sales and profits. . . .") (internal citations omitted).

[36] Fed. R. Civ. P. 56(a).

[37] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

award of judgment in the amount of **$78,960.00** for damages sustained as a result of Mr. Odetallah's breach of contract and trademark infringement.

    **IT IS SO ORDERED** this 6th day of December 2022.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE